FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ MAY 10 2005 ★
BROOKLYN OFFICE

NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X

UNITED STATES OF AMERICA

-against-

PATRICK RYAN, et al.,

Defendants.

---------------------------------------------------------X

04-CR-673 (ERK)(ALL)

**MEMORANDUM & ORDER**

KORMAN, Chief Judge.

I assume familiarity with the background of the case. Briefly, on April 4, 2005, I advised the parties that I did not intend to submit to the jury the "public officer" predicate for the manslaughter counts, although I intend to submit the "executive officer" predicate. Subsequently, I also advised the parties that, regardless of defendant's position as a public officer or an executive officer, I was prepared to instruct the jury that, pursuant to 18 U.S.C. § 2(b), he could be found guilty of causing the negligence that resulted in loss of life.

I write here to address the application of the United States Attorney contained in a letter dated April 11, 2005, that for pragmatic reasons, I should reconsider and reverse the ruling and submit the public officer theory to the jury. The United States Attorney is seeking the permission of the Solicitor General to appeal the order of dismissal (which I have not formally entered). The reconsideration is based on the premise that, if an appeal is taken it will necessarily result in a significant delay of the trial. On the other hand, if I submit the public officer theory to the jury, I can enter a judgment of acquittal after trial if the jury convicts. The appeal could be taken then. My initial reaction to this proposal was to sever the false statements counts from the remaining

1

manslaughter counts and proceed to trial on the false statements counts. Upon reflection, and after consultation with my colleagues, I have concluded that this course of action is not the most practical way to proceed; it will only result in a waste of judicial resources and burden the parties with two long trials. This conclusion is confirmed by Mr. Fitzpatrick's letter of April 13, 2005.

This problem was largely created by the fact that, although the Indictment was returned on July 27, 2004, the motion to dismiss was not filed until December 17, 2004, and was not fully briefed until February 18, 2005. If the motion had been filed a reasonable time after the Indictment, the issue would have been resolved in a manner that could have accommodated an expedited pretrial appeal without the kind of protracted delay that will result if an appeal is taken at this point. Accordingly, I grant the motion for reconsideration, which is predicated on the condition that the Solicitor General authorize an appeal; if the condition comes to pass, I will submit the public officer count to the jury. My concern about confusion that may result from the jury consideration of different standards of negligence can be addressed with sufficiently clear jury instructions.

I intend to file an opinion on the public officer issue sometime next week. In the interim, the United States Attorney is directed to address the following issue. The Dictionary Act defines "officer" as including "any person authorized by law to perform the duties of the office." 1 U.S.C. § 1. This is consistent with the case law of New York – the jurisdiction in which the defendant is alleged to serve as a public officer. The City Charter establishes that it is the Commissioner who is responsible for maintaining and operating all of the ferries of the City. NYC Charter § 2903. The Charter does not specifically mention Ryan's position, that of Director of Ferry Operations, and merely authorizes the Commissioner to appoint three "deputies." Id. at § 2902. Moreover, the only mention of a position somewhat similar to the one held by Ryan appears in the New York City Rules. The section on ferry terminals and vessels defines "Manager" as both ferry captains and "Ferry

Terminal Supervisor[s]." 34 R.C.N.Y. § 1-01. The rules require that "[e]ach terminal will have a different Manager." Id. Ryan did not hold that position. I have been unable to find any law which creates the position of Director of Ferry operations or that defines its duties, although there were various statutes in effect that created and defined the duties of officers charged with policing compliance with the laws passed by Congress relating to steamboat safety. See Act of July 7, 1838, ch 191, 5 Stat. 304 (1838); Act of August 30, 1852, ch. 106, 10 Stat. 61 (1852); Act of February 28, 1871, ch. 100, sec. 57, 16 Stat. 440 (1871).

Dated: April 13, 2005
Brooklyn, New York

s/Edward R. Korman
Edward R. Korman
United States District Judge